No. 96-008

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

       Plaintiff and Respondent,

  v.

DARRELL W. SPARKS,

       Defendant and Appellant.

FILED

MAR 03 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Sixteenth Judicial District,
               In and for the County of Custer,
               The Honorable Kenneth R. Wilson Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           Darrell Wade Sparks, Pro Se,
           Spur, Texas

      For Respondent:

           Hon. Joseph P. Mazurek, Attorney General,
           Jennifer Anders, Assistant Attorney General,
           Helena, Montana

           Garry P. Bunke, Custer County Attorney,
           Miles City, Montana

Submitted on Briefs: January 30, 1997

Decided: March 3, 1997

Filed:

_____
           Clerk

Justice Jim Regnier delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result in State Reporter Publishing Company and West Publishing Company.

Darrell W. Sparks was charged in the Sixteenth Judicial District Court, Custer County, with one count of deliberate homicide pursuant to § 45-5-102(1)(a), MCA, and one count of aggravated burglary pursuant to § 45-6-204(2)(a), MCA. Sparks entered a plea of guilty to the lesser included offense of mitigated deliberate homicide pursuant to § 45-5-103(1), MCA, and to the aggravated burglary charge and was sentenced by the District Court. Sparks appeals from the judgement, conviction, and order. We affirm.

The following issues are presented on appeal:

1. Was evidence pertaining to Sparks's guilt illegally suppressed?

2. Did the sentencing court rely on inadmissible evidence at sentencing?

3. Did the sentencing court rely on inaccurate information at sentencing?

4. Did the sentencing court violate § 46-18-101, MCA, when sentencing Sparks?

5. Did Sparks receive ineffective assistance of counsel?

2

6. Should this Court consider allegations of mental disease as a basis for invalidating Sparks's conviction and sentence?

FACTUAL BACKGROUND

On November 4, 1992, Darrell W. Sparks unlawfully entered the apartment of Steve Allen in Miles City and fatally shot his estranged wife, Marie Sparks. Sparks turned himself in to the Miles City Police Department and gave a statement in which he confessed to the crimes.

Sparks was appointed counsel, J. B. Wheatcroft, who gave notice of intent to rely on a mental disease or defect to prove that Sparks did not have the state of mind which was an element of the offense charged. Soon after, Sparks requested new counsel and J. Dennis Corbin was substituted in place of Wheatcroft.

On December 15, 1992, Sparks was admitted to Warm Springs State Hospital where personnel conducted a psychiatric evaluation, a social history report, and a psychological testing report. Sparks was diagnosed with a personality trait identified as an adjustment disorder with mixed disturbance of emotions and conduct and avoidant personality disorder.

On May 20, 1993, Sparks signed an acknowledgment of rights and plea bargain agreement in which he pled guilty to mitigated deliberate homicide and one count of aggravated burglary. The prosecution recommended a sentence of forty years on the homicide charge, plus ten consecutive years for use of a weapon, and forty years on the burglary charge to be served concurrently with the other sentences. Following a hearing on July 27, 1993, the

3

sentencing court adopted the recommendation in the plea agreement and sentenced Sparks accordingly.

## STANDARD OF REVIEW

The standard of review of evidentiary rulings is whether the district court abused its discretion. *State v. Crist* (1992), 253 Mont. 442, 445, 833 P.2d 1052, 1054. The district court has broad discretion to determine whether or not evidence is relevant and admissible, and absent a showing of an abuse of discretion, the trial court's determination will not be overturned. *Crist*, 253 Mont. at 445, 833 P.2d at 1054.

## ISSUE 1

Was evidence pertaining to Sparks's guilt illegally suppressed?

Sparks argues that certain evidence was suppressed or withheld from him by the court, his own counsel, law enforcement, and the presentencing investigator in violation of his constitutional rights. First, a letter written by him to the District Court asking it to consider the fact that he was under the influence of a "hypnotic suggestion" at the time of the crime. Second, another letter written by him to the District Court complaining that the Miles City Police Department failed to return a family video and photographs to him. Next, Sparks claims that he never received a copy of an autopsy report of the victim and a transcript of his admissions made to the police. He also claims the testimony of his court-appointed psychologist, Dr. Tranel, was suppressed because he

4

was excused prior to the completion of the sentencing hearing. Finally, Sparks believes that Dr. Tranel suppressed evidence favorable to him by not interviewing his children.

In *Brady v. Maryland* (1963), 373 U.S. 83, 86-88, the United States Supreme Court held that suppression by the prosecutor of evidence that is favorable to the accused who has requested it violates due process where the evidence is material to either guilt or punishment. However, any rights that Sparks has under *Brady* with respect to each item of alleged suppressed evidence is waived by his guilty plea. A plea of guilty voluntarily and understandingly made constitutes a waiver of nonjurisdictional defects and defenses, including claims of violations of constitutional rights prior to the plea. The reasoning is that a person pleading guilty is convicted and sentenced on his plea and not on the evidence. *State v. Turcotte* (1974), 164 Mont. 426, 428, 524 P.2d 787, 788. *See also Hagan v. State* (1994), 265 Mont. 31, 873 P.2d 1385 (the law provides that, upon entry of a guilty plea, a defendant waives all factual defenses, issues, and constitutional claims which arose prior to the entry of the plea).

Sparks asserts that the first letter was wrongly suppressed by the District Court because the letter was sealed into the record without his knowledge and its contents should have been considered during sentencing. The record shows that during sentencing the District Court asked Sparks about the letter and confirmed that he did not intend for it to be considered as evidence of a potential

5

defense that might invalidate his plea. We conclude that the claim that this letter was suppressed lacks merit.

With respect to the letter claiming that he never saw the family videotape and photographs, the autopsy report, the transcript of admissions, the failure of the investigator to interview his children, and the District Court's excusal of Dr. Tranel prior to the completion of the sentencing hearing, Sparks fails to show the relevance of how each would be exculpatory evidence under *Brady*. The Court sees no basis in the argument that any of the above-mentioned items of evidence were suppressed and prejudiced Sparks in the sentencing.

## ISSUE 2

Did the sentencing court rely on inadmissible evidence at sentencing?

Sparks claims that the District Court relied upon inadmissible evidence when sentencing him. He claims both the plea agreement and the Warm Springs report should not have been considered by the court.

First, Sparks contends that the District Court should not have considered the plea agreement at sentencing because his version of the crime set forth in the agreement was not in his words but pure "legalese" written upon advice from his attorney. He argues that the plea agreement should have taken into consideration that he committed the crime while under hypnotic suggestion. Also, he contends that the court should not have considered the plea

6

agreement because it contains a statement limiting appeals upon entry of a guilty plea.

There is no indication that the version of the crime, as set forth in the plea agreement, played any part in the sentencing process. The District Court found no evidence to support his claim that he is mentally ill. There is also no reason to believe that the statement in the plea agreement limiting appeals had any effect during sentencing.

Sparks also claims that the Warm Springs report was used against him at sentencing in violation of a motion to exclude which defense counsel filed prior to sentencing. Section 46-14-212, MCA (1991), provided:

> A statement made for the purpose of psychiatric or psychological examination or treatment provided for in this section by a person subjected to examination or treatment is not admissible in evidence against the person at trial on any issue other than that of the person's mental condition.

Defense counsel claimed that any statements inadmissible at trial would be inadmissible at sentencing, therefore the court should exclude any portions of the Warm Springs report attached to the presentencing investigator's report.

The record provides that the District Court and the prosecutor did not improperly refer to the Warm Springs report during the hearing. Also, Sparks does not show and the record does not provide how the sentencing court improperly relied on information from Warm Springs. The Court concludes that the District Court did not rely upon the Warm Springs Report when sentencing Sparks.

7

ISSUE 3

Did the sentencing court rely on inaccurate information at sentencing?

First, Sparks objects to the Warm Springs report that stated he was suffering from a personality disorder. Sparks believes that he is suffering from a "schizotypal disorder." Sparks claims that the District Court relied on this inaccurate evidence at sentencing.

Sparks clearly had the opportunity to bring this information to the attention of the District Court at the time of sentencing. Neither Sparks nor his attorney mentioned that the Warm Springs report was inaccurate at the time of sentencing. In any event, this Court concludes that the District Court did not rely upon any information in the Warm Springs report when sentencing Sparks. Thus, any inaccurate information contained in the report had no effect upon Sparks's sentencing.

Next, Sparks contends that the presentencing investigation report was incomplete because the investigator failed to interview his children. Sparks fails to show, however, that any prejudice resulted from the lack of this information. This Court sees no prejudice that resulted from the investigator failing to interview his children.

Finally, Sparks contends that he was sentenced on incomplete information because Dr. Tranel, the court-appointed psychologist, was excused as a witness before sentencing was completed. The record shows that Dr. Tranel had the opportunity to testify fully

8

and that his presence was not required for the full hearing. Again, Sparks fails to show how he was prejudiced by Dr. Tranel leaving the hearing before sentencing was complete.

## ISSUE 4

Did the sentencing court violate § 46-18-101, MCA, when sentencing Sparks?

Sparks claims the District Court did not sentence him in accordance with the crime committed or the circumstances of the offense because of its failure to consider the "hypnotic suggestion" defense. Subsection (3) of § 46-18-101, MCA, specifies the factors to be considered by a district court when sentences are imposed. These factors are: type of crime committed, the prospects of rehabilitation of the offender, the circumstances of the crime, the criminal history of the offender, and consideration of alternatives to imprisonment of the offender in the state prison.

The record clearly provides that both parties had the opportunity to argue the factors set forth in § 46-18-101, MCA, during the sentencing hearing. Sparks voluntarily agreed to the plea bargain agreement that set his sentence, and he got what he bargained for. *State v. Turcotte* (1974), 164 Mont. 426, 428, 524 P.2d 787, 788. This Court concludes that the District Court properly sentenced Sparks in accordance with § 46-18-101(3), MCA.

## ISSUE 5

Did Sparks receive ineffective assistance of counsel?

Sparks argues that both his attorneys, Wheatcroft and Corbin, were ineffective. This Court reviews ineffective assistance of

9

counsel claims utilizing the two-part test in *Strickland v. Washington* (1984), 466 U.S. 668. Under this test, it is the defendant's obligation to demonstrate that his counsel did not provide assistance within the range of competence demanded of attorneys in criminal cases and that counsel's deficient performance resulted in prejudice. Specifically, in the context of the type of issue presented here, the defendant must establish that but for his counsel's deficient performance he would not have pled guilty and would have insisted upon going to trial. *Hill v. Lockhart* (1985), 474 U.S. 52, 59; *State v. Langford* (1991), 248 Mont. 420, 432, 813 P.2d 936, 947.

Sparks has failed to demonstrate any factual basis for his ineffective assistance of counsel claim against Wheatcroft. Wheatcroft's involvement in the case consisted of filing a notice of the intent to rely upon mental disease or defect as a defense with the District Court. He was not involved in the plea bargaining or sentencing process. Sparks does not allege how Wheatcroft's brief involvement affected the outcome of his case. This Court concludes that Sparks has failed to meet the test in *Strickland* by not establishing how any deficiencies of Wheatcroft's performance would have led him to not pled guilty and, thus, would have insisted upon going to trial.

Sparks first claims that Corbin did not allow him to view a family video and photographs which were held by the Miles City Police Department. Sparks alleges that the video contradicted

10

potential witness statements against him. However, Sparks does not allege how the failure to let him see these items prejudiced his case. This Court does not find any prejudice in Corbin's failure to let Sparks view these materials.

Next, Sparks argues that Corbin should have obtained a copy of the prescription drug Meclizine to prove that the drug existed and influenced his actions. Sparks claims that he had taken thirty Meclizine pills in the month before the killing and that the drug affected his actions. The record shows that the District Court took into account that Sparks was acting under extreme mental or emotional distress on the night of the killing. Also, Sparks does not show how a copy of a prescription for this medication would have affected the outcome of his case. The claim fails to meet the *Strickland* test.

Third, Sparks claims that Corbin should have pursued a defense of hypnotic suggestion because it may have resulted in an acquittal. Also, Sparks claims that Corbin should have mentioned during the sentencing hearing that he was acting under hypnotic suggestion.

For an acquittal, Sparks would have to prove that he did not have the requisite mental state, either purposely or knowingly, when the crime was committed. Sparks fails to prove that Corbin's disregard for this defense constituted ineffective assistance of counsel. The decision whether to go to trial to disprove the requisite mental state or to plead guilty to mitigated deliberate homicide is a tactical one. This Court has previously stated that

11

it will not second guess counsel's tactical decisions. *State v. LaValley* (1983), 203 Mont. 393, 397, 661 P.2d 869, 872. We decline to do so now.

At the sentencing hearing, Corbin stated that Sparks had acted under extreme emotional and mental stress at the time of the homicide. Corbin successfully argued that, due to his mental state, Sparks should be found guilty of mitigated deliberate homicide rather than deliberate homicide. We do not see where Corbin's failure to mention "hypnotic suggestion" prejudiced Sparks in any way.

Third, Sparks claims that Corbin was incompetent because he allowed him to sign a plea agreement which forbade him from appealing and violated his Fifth Amendment right against self-incrimination. However, Sparks voluntarily signed the agreement, which provides that all factual and legal defenses which arose prior to entry of the plea are waived upon its entry. Sparks is not challenging the voluntariness of his plea.

Fourth, Sparks claims that Corbin should have objected to statements from a relative of the victim at sentencing. The person stated that Sparks would "kill again" and was a "parasite." Any objection to victim impact evidence would have served no purpose because Sparks had already agreed to the sentence through the plea bargain agreement. Sparks also fails to show any prejudice resulting from his attorney's failure to object during the testimony.

12

Next, Sparks claims that his attorney should not have objected to testimony regarding his statement of remorse in the plea bargain agreement because it was favorable to his case. However, the record does not show that the objection prevented the District Court from considering any statement of remorse or regret made by him in the plea bargain agreement.

ISSUE 6

Should this Court consider Sparks's allegations of mental disease as a basis for invalidating his conviction and sentence?

Sparks asks this Court to consider "the disease" as a new issue upon appeal. Sparks was evaluated by Warm Springs personnel who concluded that he did not suffer from any mental disease or defect. Issues presented to this Court for the first time on appeal will not be considered. *Akhtar v. Van De Wetering* (1982), 197 Mont. 205, 209, 642 P.2d 149, 152. This Court does not function as a fact finder, that is the role of the District Court. Any claim that Sparks suffers from a mental disease or defect which somehow invalidates his conviction and sentence is rejected.

We affirm.

_____
Justice

We Concur:

_____
Chief Justice

13

_____

_____

_____
Justices

14